**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PHONAKONE SANGATHIT, #R43542, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19−cv−00860−JHL |
| | ) | |
| FRANK LAWRENCE, | ) | |
| JONES, | ) | |
| RESSE, | ) | |
| KRAMER, | ) | |
| MCCARTHY, | ) | |
| EMALDI, | ) | |
| ROB JEFFREYS, | ) | |
| SIDDIQUI, | ) | |
| WEXFORD HEALTH SOURCES INC., | ) | |
| JOHN DOE #1, | ) | |
| JOHN DOE #2, | ) | |
| JOHN DOE #3, | ) | |
| JOHN DOE #4, | ) | |
| GEE, and | ) | |
| RATAKE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**JOAN H. LEFKOW, United States District Judge:[1]**

     Plaintiff Phonakone Sangathit, an inmate of the Illinois Department of Corrections

("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this civil

rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.

Sangathit alleges defendants subjected him to cruel and unusual punishment in retaliation for

---

[1] Sitting by designation pursuant to 28 U.S.C. § 294(c) and Administrative Order No. 252 of the United States District Court for the Southern District of Illinois.

filing a grievance following the restriction of his visitation rights. He requests money damages and injunctive relief.

The complaint is now before the court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez* v. *Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Sangathit makes the following allegations in the complaint (Dkt. 1): Sangathit was leaving the recreation yard when he was grabbed from the line by Internal Affairs Officers Resse, Kramer, McCarthy, and Gee. They handcuffed him and took him to the West House shower where they strip searched him and told him to bend over and spread his buttocks, while making derogatory sexual, homosexual, and racial comments. When Sangathit asked why this was being done to him, McCarthy said that "he had pissed off the wrong people," and that he will now "think twice about who you write a grievance on." (*Id.* at 7.) Sangathit continued to be handcuffed for over two hours while his cell was searched.

Resse, Kramer, McCarthy, and Gee then took Sangathit to the health care unit where he was placed in a suicide/strip cell with no running water or working toilet. The cell had not been cleaned; there was food, feces, vomit, and blood on the floor and walls; and the lights remained on twenty-four hours a day. He asked again why he was being placed under investigation and on watch and he was told "because they can do it." (*Id.* at 8.) After he submitted to a drug test and

gave a urine sample, Resse, Kramer, McCarthy, and Gee held him down and ordered medical staff John Doe #1 to conduct a rectal cavity search against Sangathit's will. John Doe #1 complied and searched Sangathit's rectal cavity, following Menard medical director Dr. Siddiqui and Wexford's unwritten policy of following the orders of non-medical personnel regarding medical care and treatment of inmates. Sangathit announced several times that he did not consent to the search. Following the search, he had rectal bleeding and asked to be examined by a doctor but was denied. He was left handcuffed again for another two hours. John Doe #2 told Sangathit that he was supposed to uncuff Sangathit but was going to leave him cuffed so that he understood who is in charge.

Sangathit was kept in the freezing cold suicide cell from Friday until Monday. During that time, he asked for the lights to be turned off so that he could sleep but was told that on Major Ratake and Emaldi's orders the lights were to be left on because of something that he had done to the warden. During this time, because there was not a working toilet in the cell, he was forced to urinate in a jar and defecate in a bucket, unable to wash his hands. He was denied clean clothes, toilet paper, soap, tooth brush, and other hygiene items. From being in the dirty cell, he developed a rash on his back, buttocks, and legs. He was given hydrocortisone cream to treat the rash, but when he tried to see a doctor and receive more cream, he was not called to sick call, leaving the rash untreated.

On Monday, Sangathit was taken to have his lower body x-rayed, but the results showed there was no object hidden internally. He was written a ticket and placed under investigation. Sangathit was then sent to segregation where he was held in another dirty cell with a wet mattress that smelled of urine. He informed defendants about his cell conditions and asked for cleaning supplies and a different mattress but was denied.

Sangathit claims that the unconstitutional treatment was done in retaliation for a grievance he wrote about Assistant Warden of Operations Jones who, without reason, had terminated his visitation rights. Sangathit also states that he later discovered that John Doe #3 claimed that he witnessed Sangathit putting something in his rectum.

## DISCUSSION

Based on the allegations in the Complaint, the court designates the following claims:

**Count 1:** Eighth Amendment claim against Resse, Kramer, McCarthy, Gee, and John Doe #2 for using excessive force in the process of forcing Sangathit to submit to an anal cavity search and keeping him handcuffed for long periods of time.

**Count 2:** Eighth Amendment claim against Resse, Kramer, McCarthy, Gee, and John Doe #1 for cruel and unusual punishment by subjecting Sangathit to a strip search and rectal cavity search.

**Count 3:** Fourth Amendment claim against Resse, Kramer, McCarthy, Gee, and John Doe #1 for conducting an unreasonable rectal cavity search.

**Count 4:** Eighth Amendment claim against John Doe #2 for failing to intervene and protect Sangathit from excessive force and the rectal cavity search.

**Count 5:** Eighth Amendment claim of deliberate indifference to a serious medical need against John Doe #2 for denying Sangathit medical treatment following the rectal cavity search.

**Count 6:** Eighth Amendment claim of unconstitutional conditions of confinement against Resse, Kramer, McCarthy, Gee, Ratake, Emaldi, and Lawrence for keeping Sangathit in the filthy cell in the health care unit with no running water or hygiene products and the lights on twenty-four hours a day for four days.

**Count 7:** First Amendment claim against Resse, Kramer, McCarthy, Gee, John Doe #2, John Doe #3, Ratake, and Emaldi for retaliating against Sangathit for filing a grievance against Assistant Warden Jones.

**Count 8:** Eighth Amendment claim of deliberate indifference against Wexford staff for failing to treat Sangathit's rash.

**Count 9:** Eighth Amendment claim of cruel and unusual punishment against Wexford and Dr. Siddiqui for implementing an unwritten policy to follow the orders

of non-medical staff regarding medical care.

**Count 10:**   Intentional infliction of emotional distress claim in violation of Illinois state law against Resse, Gee, Kramer, McCarthy, Ratake, and Emaldi.

**Count 11:**   Fourteenth Amendment due process claim against Lawrence, Jeffreys, and Wexford for the mishandling of Sangathit's grievance against Assistant Warden Jones and contributing to a culture where there are no consequences for the constitutional violations conducted by staff.

**Count 12**:   Fourteenth Amendment due process claim against John Doe #4, Lawrence, and Jeffreys for the mishandling of and failure to investigate Sangathit's grievance against Assistant Warden Jones and the corrections officers who retaliated against him.

**Count 13:**   First Amendment right to freedom of association and/or Fourteenth Amendment right to due process claim against Jones and Lawrence for denying Sangathit his visitation rights.

**Count 14:**   Eighth Amendment claim of unconstitutional conditions of confinement against defendants for placing Sangathit in a filthy segregation cell with no cleaning supplies.

**Count 15:**   Fourteenth Amendment claim for the issuance of a false disciplinary ticket.

The parties shall use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this court. **Any claim that is mentioned in the complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pleaded under *Twombly*.**[2]

## Count 1

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth

---

[2] *See Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). This includes claims against defendants who are in the statement of claim, but not listed in the case caption. The court will not treat parties not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *See Myles* v. *United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Amendment and is actionable under Section 1983. *See Wilkins* v. *Gaddy,* 559 U.S. 34, 37, 130

S. Ct. 1175 (2010) (per curiam). An inmate must show that an assault occurred and that "it was

carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or

restore discipline.' " *Id.* at 40 (quoting *Hudson* v. *McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995

(1992)). Even security measures as ordinary as handcuffs can still be used in ways that violate

the constitution. *See Hope* v. *Pelzer,* 536 U.S. 730, 738, 122 S. Ct. 2508 (2002); *Ajala* v. *Tom*,

658 F. App'x 805, 806–07 (7th Cir. 2016). Several factors are relevant to this determination,

including the need for force, the amount applied, the threat a guard reasonably perceived, the

effort made to temper the severity of the force used, and the extent of the injury caused to the

prisoner. *Hudson*, 503 U.S. at 7; *Fillmore* v. *Page,* 358 F.3d 496, 504 (7th Cir. 2004).

Sangathit alleges that without a penological reason Resse, Kramer, McCarthy, and Gee

used excessive force against him when they kept him handcuffed for over two hours and

physically forced him to submit to a rectal cavity search. Furthermore, he claims that John Doe

#2 unnecessarily kept him in handcuffs for over two hours following the search. These claims

are sufficient to proceed with an excessive force claim against Resse, Kramer, McCarthy, Gee,

and John Doe #2.

### Count 2

A strip search or rectal cavity search constitutes a claim for cruel and unusual punishment

if the search "was motivated by a desire to harass or humiliate rather than by a legitimate

justification, such as the need for order and security in prisons." *King* v. *McCarty*, 781 F.3d 889,

897 (7th Cir. 2015) (citations omitted); *see also Del Raine* v. *Williford,* 32 F. 3d 1024, 1024 (7th

Cir. 1994) ( "A [rectal] search . . . falls under both the constitutional protections of the Fourth

Amendment and the Eighth Amendment.").

Sangathit claims that he was falsely accused of hiding something in his rectum, strip-searched, and subjected to a rectal cavity search in retaliation for filing a grievance against Assistant Warden Jones. He states that defendants made threats and inappropriate and derogatory comments while conducting the strip search and prior to the rectal cavity search, which suggests that the searches may have been "driven by a desire to humiliate or harass." *King*, 781 F.3d at 898. For these reasons, Count 2 shall proceed against Resse, Kramer, McCarthy, Gee, and John Doe #1.

## Count 3

" [C]ase law indicates that the Fourth Amendment protects, to some degree, prisoners' bodily integrity against unreasonable intrusions *into* their bodies." *Id.* at 900 (declining to extend Fourth Amendment protection to a visual strip search on the basis that it did not involve "any intrusion into his body"); *see also Henry* v. *Hulett,* 930 F.3d 836, 837 (7th Cir. 2019) (citing *King* and stating that the Fourth Amendment applies "to procedures that entail intrusions within prisoners' bodies."). "In determining whether a particular search is reasonable under the Fourth Amendment, courts weight the prison's need for the search against the invasion of personal rights the search entails." *Green* v. *Hallam,* 105 F. App'x 858, 861 (7th 2004) (citing *Bell* v. *Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861 (1979)).

Sangathit claims that the rectal cavity search was unnecessary. Not only was the search done in retaliation and not for a penological reason, but the visual strip search revealed nothing and defendants could have first performed an x-ray to determine if something was being hidden internally. Although the Fourth Amendment does not require prison officials to use the least intrusive search procedure, *see Sparks* v. *Stutler*, 71 F.3d 259, 261–62 (7th Cir. 1995), Sangathit's

allegations calls into question the reasonableness of the rectal cavity search and so Count 3 will proceed against Resse, Kramer, McCarthy, Gee, and John Doe #1.

## Count 4

A prison official also violates the Eighth Amendment if he or she "'*fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Miller* v. *Smith,* 220 F.3d 491, 495 (7th Cir. 2000) (quoting *Crowder* v. *Lash,* 687 F.2d 996, 1005 (7th Cir. 1982)). Count 4 will proceed against John Doe #2, who Sangathit claims saw the other defendants subjecting him to a rectal cavity search with excessive force and failed to intervene.

## Count 5

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle* v. *Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 1101 (1976)); *see also Walker* v. *Wexford Health Sources, Inc.,* 940 F.3d 954, 964 (7th Cir. 2019). To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno* v. *Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citations and quotation marks omitted).

It is not entirely clear at this point whether Sangathit suffered from a serious medical condition as he has only alleged that he experienced some rectal bleeding following the rectal cavity search and does not provide any more information regarding his injuries. Construing the complaint liberally in Sangathit's favor, however, the court finds that Count 5 will proceed against John Doe #2 who denied Sangathit medical assistance following the rectal cavity search.

**Count 6**

Conditions of confinement which result in serious "deprivation of basic human needs" and "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes* v. *Chapman,* 452 U.S. 337, 347, 101 S. Ct. 2392 (1981); *see also Vinning-El* v. *Long,* 482 F.3d 923, 924 (7th Cir. 2007); *Cobian* v. *McLaughlin*, 717 F. App'x 605, 611 (7th Cir. 2017) ("Prison officials violate their constitutional responsibility to provide inmates with the minimal necessities of life when they disregard over a significant period an inmate's request to be relieved from exposure to human feces.").

Sangathit's allegations that he was kept in a cold cell with blood, feces, and food on the walls and floor for four days without running water, a working toilet, or hygiene products, and with the lights on at all times is enough to survive screening against Resse, Kramer, McCarthy, and Gee who placed him in the cell and Ratake and Emaldi who told the nurse to keep the cell continuously lit. *See Hildebrandt* v. *Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (supervisors are personally responsible under section 1983 "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.") (quoting *Gentry* v. *Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)).

Count 6 shall be dismissed as to Warden Lawrence, who Sangathit claims authorized his placement in the cell. Nothing in the complaint suggests that Lawrence was personally aware of the conditions of the cell and intentionally failed to act. Section 1983 creates a right of action based on personal liability and predicated on fault; thus, "to be liable under 1983 an individual defendant must have caused or participated in a constitutional deprivation." *Pepper* v. *Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). Mere administrative approval of the placement into a certain cell does not amount to the personal involvement that is required

to trigger potential liability in a civil rights claim.  *See George* v. *Smith,* 507 F.3d 605, 609–10 (7th Cir. 2007); *Sanville* v. *McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).

### Count 7

To prevail on his First Amendment retaliation claim, Sangathit must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."  *Gomez* v. *Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted).  Additionally, under the First Amendment, inmates are entitled "to file grievances and lawsuits, and officers may not retaliate against them for exercising that right."  *Walker* v. *Page*, 66 F. App'x 52, 55 (7th Cir. 2003) (citing *Walker* v. *Thompson*, 288 F.3d 1005, 1008–09 (7th Cir. 2002)).  Sangathit alleges that: (1) Resse, Kramer, McCarthy, and Gee subjected him to cruel and unusual punishment by using excessive force, conducting bodily searches, shaking down his cell, and holding him in a filthy cell with no running water or hygiene products; (2) John Doe #2 left him handcuffed for over two hours; (3) Ratake and Emaldi left him in the filthy cell and ordered the lights to remain on at all times; and (4) John Doe #3 lied about seeing him place an object in his rectum— all because he filed a grievance on Assistant Warden Jones.  Accordingly, Sangathit has set forth sufficient allegations to proceed on Count 8 against Resse, Kramer, McCarthy, Gee, John Doe #2, John Doe #3, Ratake, and Emaldi.

To the extent that Sangathit is alleging "Defendant Lauer" retaliated against him by writing a disciplinary ticket and placing him under investigation, this claim shall be dismissed without prejudice since Lauer is not listed as a defendant in the case caption.  *See Myles*, 416 F.3d at 551–52.

**Count 8**

Sangathit's claim that Wexford staff was deliberately indifferent to a serious medical need by failing to treat his rash is dismissed. First, although Wexford is named as a defendant in the case caption, "Wexford staff" is not. As noted above, the court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles*, 416 F.3d at 551–52. Second, by asserting that a group of medical staff violated his constitutional rights, Sangathit does not meet the pleading standards in *Iqbal* and *Twombly*, which require plausible allegations against individuals. *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."); *see also Brooks* v. *Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Because Sangathit does not describe the conduct of an individual defendant named in the case caption associated with his claim of unconstitutional treatment for his rash, Count 8 is dismissed without prejudice should Sangathit be able to specify a proper defendant.

**Count 9**

Sangathit claims that Dr. Siddiqui and Wexford have an unwritten policy of following the orders of non-medical personnel regarding medical care and treatment of inmates. Internal affairs officers Resse, Kramer, McCarthy, and Gee ordered Wexford staff, John Doe #1, to do a medical procedure on him in violation of an IDOC and Wexford contractual agreement that states all medical decisions shall be made by medical personnel only. This procedure was

performed because of the policy of Dr. Siddiqui and Wexford and in deliberate disregard to Sangathit's health and safety.

Decisions regarding rectal cavity searches are within the discretion of prison officials. "Determining the need for a search and the manner of conducting that search are decision reserved for prison officials." *Lewis* v. *Stephen,* No. 15-cv-051-JDP, 2016 WL 6638029 at *5 ("Determining the need for a search and the manner of conducting that search are decisions reserved for the prison officials.") (citing *Del Raine,* 32 F. 3d at 1041–42). Therefore, the allegation that non-medical personnel made the decision to subject Sangathit to a rectal cavity search does not state a constitutional claim and is dismissed.

### Count 10

Sangathit alleges intentional infliction of emotional distress under Illinois state law against Resse, Gee, Kramer, McCarthy, Ratake, and Emaldi. Liberally construing the facts, allegations that he was falsely accused and subjected to excessive force, a strip search, a rectal cavity search, unsanitary cell conditions, and sleep deprivation are sufficient to support a claim of intentional infliction of emotional distress. *See, e.g.*, *Sornberger* v. *City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (discussing intentional infliction of emotional distress under Illinois law); *Lopez* v. *City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006) (same). Accordingly, Count 10 survives screening.

### Counts 11 and 12

Sangathit claims that Lawrence, Jeffreys, and Wexford have an obligation to respond to grievances in a fair and impartial manner and address the problems listed in prisoner grievances. Through the IDOC and Menard grievance process, corrections officers and medical staff are not being punished or suffering consequences for actions that violate rules or the rights of inmates.

Furthermore, lawsuits also do not dissuade bad conduct because the prison staff are represented by the Attorney General's office or Wexford.  This system is deliberately designed to subject Sangathit to cruel and unusual punishment because officers and medical staff are not being deterred or stopped from violating his rights.

 Sangathit also claims that counselor John Doe #4 did not properly process and investigate his grievance against Assistant Warden Jones or his other grievances regarding the retaliatory conduct of the corrections officers.  He states that Lawrence and Jeffreys are responsible for training the staff about how to answer grievances in accordance with the rules and know that grievances are not properly investigated.

Inmates, however, do not have a constitutional right to an effective grievance procedure. *Antonelli* v. *Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996).  In fact, the Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution.  *Maust* v. *Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango* v. *Jurich*, 681 F.2d 1091, 1098 (7th Cir. 1982).  Lawrence, Jeffreys, Wexford, and John Doe #4 thus incur no liability under Section 1983 if they mishandle a grievance or fail to investigate a prisoner's complaints or grievances.  *Owens* v. *Evans,* 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.") (citing *Sanville* v. *McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)).

Lawrence, Wexford, and Jeffreys also cannot be held liable simply because they are in positions of authority.  "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."  *Horshaw v. Casper,* 910 F.3d 1027, 1029 (7th Cir.

2018).  Because "inmates do not have a due process right to have their claims investigated at all," and there is no *respondeat superior* liability under Section 1983, Sangathit does not state an adequate due process claim for failure to investigate the complaints within his grievances. *Wilkins* v. *Ill. Dep't of Corr.*, No. 8-cv-732-JPG, 2009 WL 1904414 at *10 (S.D. Ill. July 1, 2009).  For these reasons, Counts 11 and 12 are dismissed.

### Count 13

The Seventh Circuit has held that "although inmates do not have an absolute right to visitation, prison officials may not restrict an inmate's visitation with family members without balancing the inmate's interests against legitimate penological objectives." *Easterling* v. *Thurmer*, 880 F. 3d 319, 323 n.6 (7th Cir. 2018) (citations omitted).  Sangathit's claim that Assistant Warden Jones restricted his visits without cause and for no reason is enough at this stage to survive screening.

Count 13 shall not proceed against Warden Lawrence, however.  Sangathit states that his "visiting [privileges] were taken as a direct order by Assistant Warden of Operations Jones (AWO) and his actions were approved by Warden Lawrence."  (Dkt. 1, p. 4).  For similar reasons stated in Count 6, this is not enough to state a claim against Warden Lawrence.  Again, this bald assertion does not allege that Lawrence knew about the unconstitutional conduct and failed to act.  "Only persons who cause or participate in the violations are responsible," *George*, 507 F.3d at 609 (citations omitted), and the court does "not accept as adequate abstract recitations of the elements of a cause of action . . . ." *Brooks*, 578 F.3d at 581.

Therefore, Count 13 shall proceed against Assistant Warden Jones, but not Warden Lawrence.

**Count 14**

Sangathit states that he was sent to segregation and placed in another cell that had not been cleaned, with human waste in the toilet and in a milk carton by the toilet, mold and feces on the walls, and a wet, urine-soaked mattress. He informed defendants about the conditions, but they denied him cleaning supplies and a different mattress.

Sangathit asserts this claim against all defendants, generally, and states that defendants intentionally subjected him to these conditions that they knew would cause him unnecessary suffering. As previously discussed, liability under Section 1983 is based on individual conduct. *Pepper*, 430 F.3d at 810 (7th Cir. 2005) (citations omitted). This allegation against all defendants "does not adequately connect specific defendants to illegal acts" and so will be dismissed without prejudice. *Brooks,* 578 F.3d at 580.

**Count 15**

Sangathit claims that he was given a false disciplinary ticket after he left the health care unit in violation of IDOC policy, which requires that a ticket be written within seventy-two hours of the incident. As he only asserts this claim against a "Defendant Lauer" who is not named as a defendant in the case caption, Count 15 will be dismissed. *Myles*, 416 F.3d at 551–52.

**MOTION TO APPOINT COUNSEL**

Sangathit's Motion for Recruitment of Counsel (Dkt. 2) is **DENIED without prejudice**. The court "may request an attorney to represent any person *unable to afford counsel*." 28 U.S.C. § 1915 (e)(1) (emphasis added). Sangathit has not submitted, however, any documentation to demonstrate to the court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Sangathit may refile his motion, but should

provide the court an affidavit of financial status and supporting documentation such as a copy of his prisoner trust fund account. *See* Amendments to the Local Rules 83.9(a) and Local Rule 3.1(b). To assist him in complying with this Order, the **CLERK** is **DIRECTED** to mail Sangathit a blank motion for recruitment of counsel form.

## IDENTIFICATION OF UNKNOWN DEFENDANTS
## & OFFICIAL CAPACITY CLAIMS

Sangathit will be allowed to proceed with claims against John Does 1–3. These defendants must be identified with particularity, however, before service of the complaint can be made. Sangathit will have the opportunity to engage in limited discovery to ascertain their identities. *Rodriguez* v. *Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the name of each defendant is discovered, Sangathit shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the complaint. In that vein, the Warden of Menard Correctional Center, Lawrence, will remain a party in this action, in his official capacity only, and shall be responsible for responding to discovery aimed at identifying the unknown defendant.

Finally, the court notes that Sangathit brings his claims against the remaining defendants in their official and individual capacities. State officials named in their official capacities may not be sued for monetary damages. *Will* v. *Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304 (1989). Therefore, the official capacity claims directed against the remaining defendants will be dismissed with prejudice. As Warden Lawrence will remain a party in the case, in his official capacity, he is the most appropriate official to address any injunctive relief that might be ordered. *See Delaney* v. *DeTella*, 256 F.3d 679, 687 (7th Cir. 2001).

## LEAVE TO AMEND

Sangathit will be afforded an opportunity to file an Amended Complaint so he can provide more factual detail and properly identify defendants in **Counts 7, 8,** and **14**. When repleading these claims in the Amended Complaint, Sangathit should identify who violated his constitutional rights by name, if known, and should include a description of how his rights were violated. If Sangathit does not know the names of these individuals, he can refer to them by Doe designation (e.g., John Doe 1 (correctional officer working the noon shift)). Additionally, any individual Plaintiff intends to sue should be identified as a defendant in the case caption and should be referenced in the body of the amended complaint.

## DISPOSITION

**IT IS HEREBY ORDERED** that the complaint survives screening pursuant to Section 1915A. **Count 1** shall proceed against Resse, Kramer, McCarthy, Gee, and John Doe #2; **Count 2** shall proceed against Resse, Kramer, McCarthy, Gee, and John Doe #1; **Count 3** shall proceed against Resse, Kramer, McCarthy, Gee, and John Doe #1; **Counts 4** and **5** shall proceed against John Doe #2; **Count 6** shall proceed against Resse, Kramer, McCarthy, Gee, Ratake, and Emaldi, but is **DISMISSED** as to Lawrence; **Count 7** shall proceed against Resse, Kramer, McCarthy, Gee, John Doe #2, John Doe #3, Ratake, and Emaldi; **Counts 8** and **9** are **DISMISSED** without prejudice for failure to state a claim; **Count 10** shall proceed against Resse, Kramer, McCarthy, Gee, Ratake, and Emaldi; **Counts 11** and **12** are **DISMISSED** without prejudice; **Count 13** shall proceed against Jones, but is **DISMISSED** without prejudice as to Lawrence; and **Counts 14** and **15** are **DISMISSED** without prejudice.

Because there are no claims remaining against them, the Clerk of Court is **DIRECTED** to terminate **Jeffreys, Siddiqui, Wexford Health Sources Inc,** and **John Doe #4** as defendants

in the Case Management/Electronic Case Filing ("CM/ECF") system. **Lawrence** shall remain a defendant in his official capacity only for the purposes of identifying the John Doe defendants and implementing any injunctive relief that is ordered.

**IT IS FURTHER ORDERD** that claims against Resse, Jones, Kramer, McCarthy, Emaldi, Gee, Ratake, and John Does #1-3 in their official capacity are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Motion for Recruitment of Counsel (Doc. 2) is **DENIED** without prejudice. The Clerk of Court is **DIRECTED** to mail Sangathit a blank motion for recruitment of counsel form.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **Resse, Jones, Kramer, McCarthy, Emaldi, Gee, Ratake** and **Warden Lawrence** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by Sangathit. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Sangathit, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendants, **John Does #1-3,** until such time as Sangathit has identified each by name in a properly filed motion for substitution. Sangathit is **ADVISED** that it is his responsibility to provide the court with the names and service address for these individuals. Once **Lawrence** enters his appearance, the court will enter a discovery order setting guidelines for identifying unknown defendants. **Lawrence** will be responsible for responding to discovery requests aimed at identifying the unknown defendants propounded in accord with this discovery order.

Defendants are **ORDERED NOT TO FILE AN ANSWER OR OTHER RESPONSIVE PLEADING TO THE COMPLAINT UNTIL DIRECTED BY THE COURT TO DO SO FOLLOWING THE DEADLINE FOR SANGATHIT TO FILE AN AMENDED COMPLAINT.**

Sangathit is **GRANTED** leave to file a "First Amended Complaint" on or before **December 12, 2019**, in order to replead his claims in **Counts 7, 8,** and **14.** Sangathit is **ADVISED** that an amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Sangathit must re-file any exhibits he wishes the court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

This entire matter shall be **REFERRED** to a United States Magistrate Judge for

disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS ORDERED** that if judgment is rendered against Sangathit, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, whether or not an application for *in forma pauperis* is granted. 28 U.S.C. § 1915(f)(2)(A).

Finally, Sangathit is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** November 14, 2019

_Joan H. Lefkow_
**JOAN H. LEFKOW**
**United States District Judge**

## <u>Notice to Plaintiff</u>

The court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint.  After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint.  It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more.  When all the defendants have filed Answers, the court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature.  **Plaintiff need not submit any evidence to the court at this time, unless specifically directed to do so.**