# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

PHONAKONE SANGATHIT,     )
    )
        Plaintiff,     )
    )
vs.     )     Case No. 19-cv-860-DWD
    )
ALEX JONES,     )
JORDAN REES,     )
ERIK KRAMER,     )
NATHAN MCCARTHY,     )
FRANK EOVALDI,     )
SHAUN GEE,     )
COREY LAUER,     )
STEVEN RATHKE,     )
ANTHONY WILLS,     )
NICHOLAS CHANDLER, and     )
CASSANDRA CHITTY,     )
    )
        Defendants.     )

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Plaintiff Phonakone Sangathit, an inmate in the custody of the Illinois Department of Corrections, alleges that Defendants violated his constitutional rights as retaliation for Sangathit filing a grievance related to the restriction of his visitation rights while incarcerated at Menard Correctional Center. On October 22, 2020, Defendants Eovaldi, Gee, Jones, Kramer, Lauer, McCarthy, Rathke, Rees, and Wills moved for summary judgment on the issue of exhaustion of administrative remedies. Plaintiff, through appointed counsel, responded on December 18, 2020. On June 29, 2021, the Court held an evidentiary hearing, and, for the reasons delineated below, Defendants' motion is granted.

# FACTUAL BACKGROUND

At all times relevant to the complaint, Plaintiff Phonakone Sangathit was incarcerated at Menard Correctional Center ("Menard"). Defendants Rees, Kramer, McCarthy, and Gee were internal affairs officers. Defendant Jones was the Assistant Warden at Menard. Defendant Chandler and Defendant Chitty worked in the healthcare unit at Menard, and Defendants Eovaldi, Rathke, and Lauer were correctional officers. Pursuant to the Court's second threshold order in this action, Plaintiff Phonakone Sangathit is proceeding on fourteen claims:

**Count 1:** Eighth Amendment excessive force claim against Defendants Rees, Kramer, McCarthy, and Gee for forcing Plaintiff to submit to an anal cavity search and for keeping him handcuffed for long periods of time;

**Count 2:** Eighth Amendment claim against Defendants Rees, Kramer, McCarthy, Gee, and Chandler for subjecting Plaintiff to a strip search and rectal cavity search;

**Count 3:** Fourth Amendment claim against Rees, Kramer, McCarthy, Gee, and Chandler for conducting an unreasonable rectal cavity search;

**Count 4:** Eighth Amendment claim against Gee for failing to intervene and protect Plaintiff from excessive force and the rectal cavity search;

**Count 5:** Eighth Amendment claim of deliberate indifference to a serious medical need against Gee for denying Plaintiff medical care following the rectal cavity search;

**Count 6:** Eighth Amendment claim of unconstitutional conditions of confinement against Defendants Rees, Kramer, McCarthy, Gee, Rathke, and Eovaldi for keeping Plaintiff in a filthy cell in the healthcare unit with the lights on for four days;

**Count 7:**      First Amendment retaliation claim against Defendants Rees, Kramer, McCarthy, Gee, Rathke, Eovaldi, Lauer, and Jane1 for retaliating against Plaintiff after he filed a grievance against Assistant Warden Jones;

**Count 8:**      Eighth Amendment claim of deliberate indifference against Defendants Chandler, Gee, and Chitty for failing to provide medical treatment for Plaintiff's rash while he has in the healthcare unit;

**Count 10:**     Intentional infliction of emotional distress claim against Defendants Rees, Gee, Kramer, McCarthy, Rathke, and Eovaldi;

**Count 13:**     First Amendment and/or Fourteenth Amendment claim against Defendant Jones for denying Plaintiff visitation rights; and

**Count 14:**     Eighth Amendment unconstitutional conditions of confinement claim against Defendants Gee, Lauer, and McCarthy for placing Plaintiff in a filthy cell in segregation without cleaning supplies.

(*See* Doc. 24).

With his complaint, Plaintiff included copies of three grievances that he alleges he submitted ahead of filing suit. The first was an emergency grievance dated April 7, 2019. The grievance addresses his allegations that he was strip searched and subjected to a cavity search by Defendants Gee, Rees, Kramer, and McCarthy on March 22, 2019. It explains that Plaintiff then was taken to the healthcare unit and searched again before being handcuffed for a prolonged period of time. The grievance also describes similar events on March 25, 2019. (Doc. 22, p. 23-24).

The second grievance attached to Plaintiff's complaint was an emergency grievance dated April 10, 2019. The grievance describes unsanitary conditions in

Plaintiff's cell in the healthcare unit. Plaintiff claims he was held in the cell without water or the opportunity to shower for three days before being taken to a similarly unsanitary cell in segregation. The grievance also suggested that the motive behind the poor treatment was retaliation for a different grievance he had written against Defendant Jones. (Doc. 22, p. 25-26).

The final grievance attached to Plaintiff's complaint was an emergency grievance dated April 30, 2019. In the grievance, Plaintiff alleges that he feared for his safety after filing a grievance about Defendant Jones, and he repeated his allegations about the searches and conditions of confinement. The grievance also mentions that he had not received responses to several earlier filed grievances. (Doc. 22, p. 27-29). Plaintiff's complaint also includes a copy of a letter that he alleges he wrote to Warden Frank Lawrence on April 30, 2019, to ask about the status of his April 7 and April 10 grievances. He similarly includes a letter he wrote to John Baldwin, IDOC Director, about not receiving responses to his emergency grievances from Menard officials. According to Plaintiff, neither Warden Lawrence nor Director Baldwin responded to his letters. (Doc. 22, p. 34-35).

The Court held an evidentiary hearing on June 29, 2021. During the hearing, Defendants provided a signed affidavit from Yvette Baker, a grievance officer at Menard. According to the affidavit, Menard's grievance records do not include any grievances or emergency grievances related to Plaintiff's claims in this action. That is, Menard has no record of receiving the emergency grievances attached to Plaintiff's complaint. Defendants also presented two exhausted grievances that Plaintiff submitted in July and

September 2019. (Doc. 87). The grievances involve complaints related to Menard staff actions and disciplinary tickets Plaintiff received. Menard officials responded to each. (Doc. 87-2).

Defendants also submitted Plaintiff's cumulative counseling summary, which is a summary of notes by various Menard officials, including Plaintiff's counselor. The notes include dates of interactions with Plaintiff and the officials' summaries of those interactions. During the relevant time period, the summary shows that Plaintiff was sent to segregation on March 27, 2019. On April 12, 2019, Sara Quick, a counselor, spoke with Plaintiff while touring the cell gallery. They discussed Defendant Jones' administrative decision not to allow a particular woman to visit Plaintiff. Plaintiff also was sent a trust fund statement. Plaintiff was next seen on a gallery tour on May 22, 2019, where he again requested a trust fund statement. No entries mention receipt of Plaintiff's emergency grievances of any discussion with officials about the complaints in the grievances. By comparison, the summary shows that the grievance office received Plaintiff's July grievance related to his disciplinary ticket on July 29, 2019. A similar entry for his September grievance was made on September 19, 2019. (Doc. 87-3, p. 1-3).

During the hearing, Plaintiff testified about the grievances attached to his complaint. He explained that the copies attached to his complaint were handwritten copies that he made at the same time that he submitted his emergency grievances. As to the April 7 and April 10 grievances, Plaintiff claimed that the day shift officer refused to bring him the grievance box, so he gave the officer his grievances to put in the box for him. When the day shift officer refused to bring Plaintiff the grievance box to submit the

April 30, 2019 grievance, Plaintiff held the grievance for the evening shift officer. The evening shift officer brought Plaintiff the grievance box, and he submitted it by placing the grievance in the box himself. Plaintiff explained that he wrote to the warden and the IDOC director when he didn't receive responses to his emergency grievances.

**LEGAL STANDARDS**

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the

district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Bentz was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE

§ 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

Defendants argue that Plaintiff neither submitted nor fully exhausted any timely grievances relevant to his claims in this action. Plaintiff contends, however, that he did submit three relevant emergency grievances and that prison officials failed to respond to them, rendering the grievance process unavailable to him. A prisoner is not obligated to exhaust administrative remedies that are unavailable to him. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). As a result, the Court must weigh the evidence, including Plaintiff's testimony, to determine whether Plaintiff attempted to exhaust his administrative remedies but was prevented from doing so.

Before the Court are three documents that Plaintiff maintains are copies of emergency grievances that he submitted. Two of the three grievances purportedly were handed to a correctional officer who refused to bring Plaintiff the grievance box. As to these two grievances, Plaintiff suggests, in essence, that the officer did something

untoward with the grievances to prevent them from being reviewed by other Menard officials or that, upon receipt by the appropriate officials, the grievances were discarded or lost. The third grievance was submitted directly to the grievance box with the assistance of a different correctional officer, but it similarly disappeared. To credit Plaintiff's testimony would require inferring, without any evidentiary support, that Menard officials conspired to prevent him from filing grievances as to the allegations in this case but not to prevent grievances as to unrelated claims. Without more, Plaintiff's testimony alone is insufficient to support such a theory, and the Court finds that it lacks indicia of credibility.

It does not escape the Court's attention, however, that Plaintiff's claims of missing or lost grievances are not unique to this litigation. It is often the case that, when there are no IDOC records of grievances related to a claim, a prisoner will claim that he submitted a grievance but never received a response. These allegations cannot be resolved without a hearing and a credibility determination. It might behoove prison officials to devise a better recordkeeping system or to implement some sort of receipt process to allow for the resolution of these types of disputes without significant Court intervention. The system in its current iteration is not working, and the risk of disparate outcomes is too high absent an improvement in grievance tracking at IDOC institutions.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment on the issue of exhaustion is **GRANTED**. Plaintiff Phonakone Sangathit failed to exhaust his administrative remedies prior to filing suit, and, as a result, his claims are **DISMISSED**

**without prejudice**. The Clerk of Court shall enter judgment reflecting the dismissal and

shall close this case.

       **SO ORDERED.**

       Dated: July 7, 2021

_____
DAVID W. DUGAN
United States District Judge